Mr. Weiss. Please report. After the two previous arguments, I perhaps should apologize for bringing the Court back to the more mundane world of whether or not James Morrow Collins, Jr. was a leader or organizer of a gambling enterprise based upon a cockfight in rural South Carolina. But that's basically what this case is about. The facts in this case involving Mr. Collins' role as leader or organizer basically show that he attended at least one event in 2008 where the cockfight took place and where the entry fee was deemed to be gambling. He missed about half of them in 2009. He was seen fiddling with a computer, to use the word, one of the witnesses, but didn't know what he was doing. He paid winnings perhaps one time. He helped along with Mr. Hutto, let Sergeant Lewis leave the incident once he was uncovered in a peaceful manner. There was no testimony he ever oversaw or directed an individual or requirement under the enhancement role. He took his orders as did everyone else from Mr. Jeffcoat. And those are the basic facts about Mr. Collins that the lower court deemed him to be a leader or organizer as opposed to a manager or supervisor. This court in Chambers requires a factual finding as to what specific acts he did that made him a leader or organizer. There were no factual findings by the trial judge. Perhaps, of course, the court could conclude that her finding that Mr. Collins supervised everybody without ever citing one incident of one person that he supervised is a factual finding, but I think that's a little too broad. Then the affidavit of many of the participants clearly demonstrate that Mr. Collins was not She said that Mr. Jeffcoat relied upon Mr. Collins and others who run the operation, but there was no proof of that and nor were the others identified in that particular statement of hers. She appeared to ignore the fact after saying that Mr. Collins ran it along with Mr. Jeffcoat. She ignored the fact that for about half the time during the period of this conspiracy, Mr. Collins was absent from this particular operation, and yet it continued to operate as it always had. She quoted or she thought Mr. Rogers said that Mr. Jeffcoat and Mr. Collins were managers of the operation, but Mr. Rogers' comment was simply that I thought Gene Jeffcoat was in charge and Jimmy Collins was under him, just as everybody else was under him, although Mr. Rogers didn't add that last line. That was my comment on the fact. I had thought that the district court, and I think I'm right, had relied on the video in which the authorities came and everybody looked to your client. She relied upon video that showed Mr. Collins being there. Not just being there, but they didn't know what to do and they looked to him. That's the second video. What she relied upon, I think to a large extent, was the second video where the undercover agent was uncovered, and all of a sudden, what do we do with him? What do we do with him? They went to Mr. Jeffcoat. They went to several people. I'm sorry. Is the video in the record? The video is not in the record. It's not in the record. Well, it was introduced at trial. Yeah, but it's not in the appellate record. I don't think it's in the appellate record, no. I haven't seen it. I'm not sure I would watch it, frankly, if it were in the record, but I suppose I would. You're here asking us, I think, in significant part, to make a clear error finding on the basis of media evidence that we haven't even seen, but that the district court has seen. The district court describes it, but here's the point. The point of the video is this. But see, that's my problem. This is you standing here telling us what the point of the video is, but I've already got an account of what the video is, and the district court's reliance on the video. Let me finish the statement. I think I can explain it. The video is not relevant to any gambling operation. The videos are only relevant to what happened to Sergeant Lewis after he was uncovered. I understand that's a lawyer's argument, but the district court said it was all inextricably interwoven. The gambling, the cockfighting, it was all in one place. Right, but even the cockfighting was not related to the video that uncovered Mr. Lewis. That simply wasn't in furtherance of the conspiracy or anything like that. It was not operating the gambling business, uncovering Mr. Lewis in the video. What someone did once Mr. Lewis was uncovered was really not relevant to the gambling operation or the cockfight. And I understand that is lawyer's argument, but I hope you don't expect me, at least, to accept that as absolute gospel truth and fact. It's just, that's your opinion, and I respect it, and I respect it as your advocacy, but that's not some fact handed down from on high that we are bound to accept. I think it is fact when the judge found, the judge did not even explain how uncovering Mr. Lewis was related to the gambling operation. She didn't say that, you know, the gambling operation was totally independent of uncovering Mr. Lewis. But it's not totally independent of the cockfight. It's really somewhat independent of the cockfight, too, and if you read the transcript in there, Mr. Lewis also describes what happened in there, I think, very, very adequately on that. But basically, once Mr. Lewis is uncovered, that's totally independent of cockfight or whatever. He's uncovered at the cockfight, right? Excuse me? He's uncovered at the cockfight. He's uncovered at the cockfight. So, it's not like he was uncovered here in the courtroom, he was uncovered at the scene of the crime. Correct. So why is it totally unrelated to the crime? It's not in furtherance of the cockfight, I guess is the best way to put it. Well, of course, it stopped when he was uncovered, it's true, but it had existed before then. But the point is, if it's uncovered at the cockfight, it's certainly, at that point, the cockfight's over. But that doesn't, surely that can't be your argument, that just because they stopped doing illegal, like if I'm selling drugs and the police come into my house and I stop selling drugs, then you're saying that my selling of drugs didn't have anything to do with it? What I'm saying is there's no evidence in the record of anything that Mr. Collins did before that moment that would elevate him to the role of a leader or organizer. But he was directing them what to do when this person is uncovered. He and Mr. Hutto were, that's correct, because he and Mr. Hutto directed them off of the premises. He was managing the fight board, he was working on computer matches, that he did bring his own birds there, that they were fought by Mr. Grooms. I believe for him that when the undercover wire was discovered, he was the decision maker. He directed others in what they should do concerning that. He was also the person who was involved at times in obtaining referees. Those are her findings. Well, there's nothing in that record to say that he obtained referees that I've been able to find. I mean, she made some findings that are simply not supported by the record. She cited... I thought your argument was, when you started out, that there were no findings. But no, you say her findings are clearly erroneous. I think some of her findings are overly broad also. And I think any findings she did find... She named like five individuals and said, these people show that Mr. Collins was a leader or organizer. Well, that's technically a finding, but if you go to what those individuals said, they don't back it up. They don't back up that she is that, that Mr. Collins is in that role. You know, Mr. Rogers, as she said, that Mr. Rogers had... Mr. Collins and Mr. Jeffcoat were managers of it. But if you go to Mr. Rogers' testimony, he says, no, Mr. Jeffcoat ran it and Mr. Collins was under him. He never used the word manager or ran it. Mr. Rogers is also verified that Mr. Collins wasn't there half the time. So she made some... And she made the factual finding that Mr. Collins was over everybody, but never named one individual that he specifically supervised or managed in any matter whatsoever. So it's a conclusion, but I think it's an awfully broad conclusion and certainly does not keep up with the seven factors listed in the notes to the sentencing guidelines by which we ought to determine whether or not someone is a leader or organizer. It's interesting that she used the word manager when referring to Mr. Rogers' comment, but then found him to be a leader or organizer as opposed to just a manager. And in that respect. So when she doesn't make these specific findings and then basically, you know, I can honestly say the second time she knew what my argument was the first time and she never made a specific finding as to who he was a leader of or who he supervised as required by the rule. And the government, again, at sentencing hearing, if they want Mr. Collins to be a leader or organizer, they called every witness that testified and asked them specifically about what Mr. Collins' role was and they neglected, they did not do that. So I think when you look at the overall record, there's simply no testimony here that he was in fact a leader or organizer. I'll get into the video a little bit in the sense that there are people that are natural leaders that may not be a leader of a particular organization. But when something comes up, they can diffuse the situation and keep some calm heads in there and Mr. Collins did, I think, in this case. But that certainly does not make him an organizer or leader of the cockfight or the gambling enterprise simply because he had that natural ability in the case of an emergency situation and I think he did do a good job of keeping it diffused, he and Mr. Hutto both. Your argument is basically if a fight comes up, you happen to be the only person that's 6'7", 280 pounds in the room, so therefore, you quell it and make your leader with the circumstances. Mr. Collins would love that description but unfortunately didn't. I think he did it more through personality than height. But that's the same thing. Correct. The same principle. Just because you have the ability to be a leader doesn't mean you are a leader. We're not talking about the potential of leader or organizer, we're talking about whether in fact you are a leader or organizer of the overall enterprise, not just able to take advantage, to help out in one specific situation and keep things calm. So I don't think the factual findings are there for that in this particular case. I haven't been able to find them as the comments to the rules were amended several years ago to reflect the fact that you have to supervise a person before you even get to them. And I look in vain, I ask at the sentencing hearing, who did Mr. Collins supervise? I ask in my brief, who did Mr. Collins supervise? And I ask today, who did Mr. Collins supervise? And I've yet to have an answer from the government as to what individual Mr. Collins supervised in this record that would justify the enhancement. And it's simply not there. I would like to touch briefly also on the acceptance of responsibility. The only crime left after this court reversed it when the government dismissed the cockfighting charges was the gambling issue. The gambling issue is simply, factually, Mr. Collins has not disputed a single fact of the gambling case. He's not disputed that people paid money for entry fees. He's not disputed that the winnings depended upon the entry fees. And he's not disputed that there was cockfighting going on. He's not disputed any of those facts. The only fact he disputed below and at this level previously was whether or not the government was required to prove a mens rea of the fact that he knew he was violating state law before the federal law would kick in. He did not even request that the court prove that he knew it violated federal law. He was willing to say if it violated, you should have a mens rea that proves that I knew I was gambling under state law before the federal law kicks in. That was rejected. But he never disputed any of the facts on the gambling charge and therefore there should be an acceptance of responsibility for that because he did not dispute those facts but was dealing with that one narrow issue of whether or not a proper mens rea required. And I think for those reasons, this matter should be remanded for resentencing. Mr. Wise, before you sit down, do I understand and recall, I guess, the district court gave him an appeal bond, correct? No, sir. No, sir. She specifically said... I mean, originally. Originally, yes. On the first trial. So, okay. That's what I was asking. Right. Because he'd have finished his sentence by now. No, sir. I said, if she hadn't released him pending appeal, he'd have finished his sentence by now. If on the first appeal, that's correct. Yeah. Yes, that's correct. Okay. I just wanted to clarify that. Yes, that's correct. But she gave him a release pending appeal, and of course, he was successful on the first appeal. Right. And so, he just reported to the Bureau of Prisons. Well, he actually went back and was resentenced. Resentenced. Right. And then she didn't give him an appeal. Well, she basically said early on that due to the fact that I'm sure the full circle hear this by the time it would impact his sentence, I'm not going to grant him an appeal bond. And I didn't actually request one at that time. I did later, and she denied it. But did not request one at that time because I was basically thinking of everybody. We were probably here a little later than we anticipated, but not appreciably later. Well, we tried not to bring you here late. Right. Thank you very much. Good morning. May it please the Court. My name is Nathan Brown. My name is Nathan Williams. I'm an Assistant United States Attorney in the District of South Carolina. The trial court judge made several findings and certainly nothing that would constitute clear error about the leadership and organizer role of Defendant Jimmy Collins. She cited two individual testimony of witnesses. She cited two PSR that was replete with references to not only his activities on the day the but also to prior incidents and a background that Mr. Collins had in the cockfighting industry. But most importantly, she cited to the video, and when I say the video, to the testimony regarding the video provided by the agent and the other people that were there when the officer or the agent was uncovered. So certainly within the context of the factual basis articulated by the trial court judge, there's certainly no clear error regarding the supervision role or the leadership role demonstrated by the defendant in the gambling organization. I guess as to the video, this is a classic example of no good deed goes unpunished. I think, you know, obviously I could have supplied a supplemental joint appendix we did with the PSR. I have the video here. It occurred to me that that was probably a better example of what the court was looking at. But I did feel that when looking at the joint appendix that the trial court judge articulated what she saw on that video. And I thought the agent and the other witnesses really sort of piece by piece went through it. You certainly can't describe it as well as viewing it. But I thought in the context of clear error that the trial court judge articulated what was seen in the video and what gave her that opinion, that was the basis for the guideline range. Who did he supervise? Who? Yeah. He certainly supervised other participants in the gambling enterprise. Now under 1955. Can you testify to that? What was the evidence of that? I can start with. Just give me an example. Mr. Rogers, who was a referee and also part of uncovering. How was he supervised? He was a referee. So the referees were supervised by Mr. Collins because as Mr. Rogers said, Mr. Collins was good at smoothing out, this is on page 222, the joint appendix, good at smoothing out arguments, straightening out errors that a referee might make, and management. And he said if there was a dispute, meaning if a referee made a bad call in an animal fight, Mr. Collins would smooth that out and was good at management. That's probably the best example because somebody did say the word management and certainly when trying a case, we're not looking at leadership roles. That was an unsolicited, unpointed statement made by a witness that Mr. Collins supervised him as a referee and certainly he was one of the indicted and convicted people in the gambling and animal fighting enterprise. That wasn't the only testimony along those lines. There were other individuals. But he got the highest enhancement for that, correct? Correct. And that required what? Leadership. Leadership. And leadership's a good word. In the video does show it and I think it was explained in the record, but when things really went bad, when their worst case scenario sort of came true and they found an undercover agent standing around them, everybody went to Jimmy Collins to the defendant. Even Mr. Jeffcoat who owned the property, and there's a difference between supervising property as you all know and people, Mr. Collins went and got Mr. Jeffcoat and brought him over and talked to him about what the situation was, told him what the options were, and then directed people like Wayne Huddo who is another supervisor or another referee on what to do. Told the undercover officer where to go. Judge Curry, essentially, I'm sorry, the trial court judge, I always use their names. The trial court judge said in the joint appendix in her finding that essentially Mr. Collins was in charge of everything that went down as soon as the undercover was found and that includes far more than five people. And what that is referring to is every single person that was at that event was at that point in time under the direction, under the leadership of Defendant Collins. He made the decisions, he made the calls, he decided who to bring in, he took the undercover officer aside, put him in a separate room, asked for his ID, asked him where he worked, told him he couldn't make a phone call, told him to leave, and walked him out to his car. I mean, that's leadership. And I understand Mr. Wise's argument that there's different types of leadership. Not really. When this happens and you have to look to who leads, on video, Mr. Collins is clearly that person and that was what the trial court relied on. Like at a restaurant or a club, it could be the bouncer would be the leader because any time he's the person who pulls the person aside and says, who are you, what's your ID, you have to get out of here. That makes the bouncer the leader of the club? Not necessarily. He could be. But no, not that alone. Well, you're just taking a slice of one incident and saying he's a leader just because people listen to him in that incident. Well, I think not just because of that, but because of the factors set forth, meaning, and I believe it's in, let me find my notes. Well, if there was criminal activity at the club and the bouncer acted on his own, maybe he would be the leader. But if he's talking to the owner of the club and asking what he should do, and then the club came and let everybody around, he could be doing what the bouncer might ordinarily do, but because he has skin in the game, he is doing those activities. I guess that's what you said, this man is involved in the illegal activities. Right, and I think that to take the bouncer analogy, I wouldn't consider a bouncer to have the ability to exercise decision-making authority, for instance. As in putting somebody out? I would say that is exercising authority granted to him by some other person, meaning he is delegated with the authority to take somebody out in certain circumstances. Mr. Collins was deciding whether this person should leave, and certainly in the context of talking to Mr. Jeffcoat, who owned the property, was exercising the decision-making authority in a much less limited basis. I understand. I see. In the far stretch of it, I guess you could call it leadership, but most of this sentencing is so draconian anyway. Is that really what the context of leader, organizer really meant? It could have been a fire and everybody listening to him, so now you go that way and you go through the back door. You're not a leader, you're just someone who took charge in an incident, and here, because of humanitarian purposes, he didn't want the person to be injured, so he stepped in to make sure that, look, leave him alone, take care of it, I'm going to make sure you're safely out of here. That's what I meant, I guess it went over, I said, no good deed goes unpunished, because he's being punished because he's the one who helped the undercover person get out safely. Well, I would suggest that he didn't help that agent one bit. He didn't? He marched him through a group of people that weren't very happy. He could have taken him out three other doors. He could have said, you know what, keep it quiet, let's go talk. He brought two or three other equal level supervisors in to say, should we call the sheriff, should we get a trespass warrant, can we keep him here, you can't make a phone call. So, to say that it was humanitarian, I think mischaracterizes it. Now, he didn't want to get himself in trouble, I mean, you know, at some point, somebody's going to get shot if they detain an officer too long. So I would not say that he was being humanitarian, I would say he was acting in his self-interest and trying to, you know, he asked several pointed questions of the agent. They asked him to take his shirt off at one point in time and take his hat off. So, that to me is not humanitarian, I would put it a bit worse, most likely in every circumstance for the defendant, I don't think he was doing it out of humanitarian concern for the officer. And again, he walked him out to the car and made sure he was escorted by another individual. I don't think that was for his safety. I think they were making a point. But I wouldn't characterize it as humanitarian. I would say, to get back to sort of the bouncer analogy, I think that what we saw was sort of a nature of participation, which the application note, the 3B1.1, talks about the degree of Mr. Collins' participation, although maybe not at every single event, was one that was had started generating this pit or this place for fighting, that he was a longstanding member of different gamefowl breeders' associations, that he was a former president. So that all informs the court's determination that he was a leader, that there's more to it than the fact that he stood up in that one circumstance. That background shows that he's the person that would be expected to be a leader. There's a comparison by the defense to Mr. Jeffcoat, who owned the property. And so I would suggest that Mr. Collins controlled the individuals there, the referees. In a 1955 gambling charge, there's case law that says the person that cleans up or serves coffee can be part of that, those five people in the business. And certainly what the court found was that Mr. Collins, at that moment in time at least when the uncover was found, showed that he was a leader and a supervisor of everybody in there, referees, people that took money at the door, people that decided the fight matchups, people that paid out winning. So certainly more than five, but the court did cite specific testimony about Mr. Collins being a leader, but I feel like the defense's request that the court name people or that people probably isn't germane to the certain number that were clearly on video and the number that were clearly convicted as 1955 defendants. With regard to the other argument, I feel like that's a fairly straightforward factual dispute. I think that at trial, cross-examination of witnesses got into whether Mr. Collins was present, whether he was gambling, sort of what his activities were. And so the law talks about factual disputes or the guidelines talk about factual disputes. And I think that on the record there were several instances where in cross-examination witnesses were asked about the presence of Mr. Collins and what he did. So certainly he denied his factual guilt in that case and wouldn't be entitled to acceptance point. Mr. Williams, I imagine you wish you had asked the district court to say just a little bit more about what sentence it would have imposed apart from the enhancements. In other words... Well, the guideline without the enhancement, I believe the top of the guideline without the enhancement would still reach where he was sentenced, the 21 months. That's what I'm getting at, that it perhaps would have been helpful if... And I don't mean this as a criticism at all, really, I don't. I probably wouldn't ask a judge that. You would not? No, I may not. I think a lot of prosecutors around the circuit are doing that, Mr. Williams, really. I don't think a judge is insulted or feels umbrage when a prosecutor says, Judge, given the big fight we've had over the enhancements and the adjustments and the acceptance of responsibility, perhaps the Court of Appeals would find it useful if you would just indicate quite apart from all that, what you think the appropriate sentence should be under 3553A. I mean, we've had lots of those cases, not lots, we've had a few of those cases. And I feel like if I do that, I'm implying that the judge might be wrong. Okay. I respect that. Look, I respect that. You know, it's her courtroom and you're in it, I'm not. And so, I just offer that as an observation, that's all. And at least our judges are usually a bit more informed than I am on those findings. I stay out of it. Thanks. There's no other questions. I don't have anything else to add. Okay. Thank you. Mr. Wise, do you have a supervoto? Ms. Breeden. Mr. Williams made the statement that in the video you could see two or three other equal supervisors were brought in, none of whom were enhanced, all of whom got a year and a day, and many of whom attended a whole lot more cockfights than Mr. Collins did. I've read briefly the testimony of Mr. Rogers that was cited by Mr. Williams, and under no stretches can anyone say that Mr. Rogers said that Mr. Collins directed him in any activity whatsoever. He simply said what has been said, that Mr. Collins had the potential for being a leader. And potential for being a leader is not the criteria by which you enhance the sentence in this. I would also point out that we also, again, as I mentioned, have asked who the participant was that Mr. Collins supervised, and once you eliminate Mr. Rogers, again, that question is unanswered. And until that question is answered, there cannot be an enhancement. I would also point out that the co-defendant, who Ms. Hutto and I think it was Ms. Dowell was the main one, received a sentence of a year and a day, and her involvement, one, she attended a whole lot more cockfights than Mr. Collins did, and certainly if Mr. Collins was the leader, her role in that thing would seem like it would be a leader also. So I think the logic is if there was not an enhancement in Mr. Collins, we would have gotten a year and a day with everybody else. He actually could have gotten probation according to what we read in the transcript. Well, he had come up early with hat in hand. They say he could have gotten probation, but six of them did not, and they did not get probation. But I think the enhancement was simply improper in this case. I appreciate it. Thank you. Thank you, Mr. Wise. We will come down and greet the lawyers and then go directly to our last case.
judges: Diana Gribbon Motz, Roger L. Gregory, Andre M. Davis